**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
--------------------------------X

YAAKOV M. VANN,

                      Plaintiff

   -against-

STATE OF NEVADA,

                      Defendant

HONORABLE DOUGLAS SMITH,

                      Defendant

CLARK COUNTY, NEVADA

                      Defendant

SARGENT KOSMIDES

                      Defendant

LAS VEGAS METROPOLITAN POLICE DEPARTMENT

                      Defendant

MISTER LORNE WYNE,

                      Defendant

AKA "RABBI YITZ WYNE"

                      Defendant

MISS. MICHELLE HALABE,

                      Defendant

PETER DUBOWSKY

                      Defendant

--------------------------------X

**COMPLAINT**

Plaintiff demands Jury Trial

CV-S-03-0507-PMP-PAL

UPON INFORMATION AND BELIEF, PLAINTIFF YAAKOV VANN ALLEGES:

AS AND FOR A FIRST COMPLAINT AGAINST DEFENDANTS WYNE, DUBOWSKY, HALABE, KOSMIDES, LAS VEGAS METRO POLICE DEPARTMENT AND CLARK COUNTY.

1. The above named defendants, Wyne, Dubowsky, and Halabe wished to conceal fraud within the Young Israel Aish HaTorah of Las Vegas.

2. Plaintiff knew of said fraud, including that Mr. Wyne represents himself to be an Orthodox Rabbi despite never receiving *Yora Yora* Rabbinical certification.

3. The above mentioned Defendants attempted to conspire with other Jewish organizations to get Plaintiff to "voluntarily move" away from their synagogue.

4. Having failed to voluntarily get Plaintiff to move out of state, Defendants began a campaign of illegal conduct including bribing officials in the Las Vegas Metro Police Department (hereinafter LVMP) and in the Justice Court.

1

5.    Said individual at the LVMP in the middle of this illegal activity is Sgt. Kosmides.

6.    Sgt Kosmides did conspire with Wyne, Dubowsky and Halabe to provide false
      information in court.

7.    Sgt Kosmides did conspire with Wyne, Dubowsky and Halabe to not investigate another
      LVMP officer's misconduct.

8.    Sgt Kosmides did in fact threaten Plaintiff with arrest on more than one occasion despite
      no crime being committed by Plaintiff.

9.    Plaintiff's Constittuional rights were absolutely abridged by the activities of Wyne,
      Dubowsky, Halabe, and Kosmides.

AS AND FOR A SECOND COMPLAINT AGAINST DEFENDANTS WYNE, DUBOWSKY,
HALABE, KOSMIDES, CLARK COUNTY, JUDGE SMITH[1] AND LAS VEGAS METRO
POLICE DEPARTMENT.

10.   The above named defendants, Wyne, Dubowsky, and Halabe did conspire with Judge
      Smith to abridge Plaintiff's Constitutional rights.

11.   Specifically, several ex-parte communications were had between said Defendants and
      Judge Smith including one on the record on November 19, 2002.[2]

12.   The above named defendants, Wyne, Dubowsky, and Halabe agreed with Judge Smith to
      incarcerate Plaintiff with no legal justification.

13.   The above named defendants, Wyne, Dubowsky, and Halabe conspired and agreed with
      Judge Smith and Sgt. Kosmides to issue Orders of Protection in violation of Nevada State
      Law.

14.   The above named defendants, Wyne, Dubowsky, and Halabe conspired and agreed with
      Judge Smith and Sgt. Kosmides to issue Orders of Protection in violation of the
      Constitution of the United States.

---

[1]Plaintiff is aware of judicial immunity on monetary damages, but Plaintiff is seeking an
Injunction which is permitted.

[2]Transcript of November 19, 2002, page 11 line 13, Judge Smith orders me out of his
court room but the communications continue.  There is further evidence that other
communication were had and Judge Smith further orders them to occur on the record.

AS AND FOR A THIRD COMPLAINT AGAINST DEFENDANTS WYNE, DUBOWSKY, HALABE, KOSMIDES, CLARK COUNTY, JUDGE SMITH[3] AND LAS VEGAS METRO POLICE DEPARTMENT.

15. The above named defendants, Wyne, Dubowsky, and Halabe conspired and agreed with Judge Smith and Sgt. Kosmides to issue Orders of Protection to keep Plaintiff and his family from worshiping their religion.

16. Specifically, said named Defendants conspired and agreed to illegally cause Protection Orders to be placed so that Plaintiff can not attend Synagogue without being in violation of Plaintiff's religion.

17. Specifically, said named Defendants conspired and agreed to illegally cause Protection Orders to be placed so that Plaintiff's children can not attend religious school.

18. All of said Defendants knew there was no legal justification for any Order of Protection to be issued against Plaintiff.

AS AND FOR A FOURTH COMPLAINT AGAINST DEFENDANTS WYNE, DUBOWSKY, HALABE, KOSMIDES, CLARK COUNTY, JUDGE SMITH[4] AND LAS VEGAS METRO POLICE DEPARTMENT.

19. All Defendants conspired and agreed to jail Plaintiff without providing appointed counsel.

20. Plaintiff was in fact sentenced to jail without receiving appointed counsel.

21. Plaintiff was in fact denied Constitutional Right of Cross Examination.

22. Plaintiff was in fact denied Constitutional Right to put on Defense.

23. Plaintiff's business was effectively taken by government action without just compensation.

24. Plaintiff's business was effectively taken by government action without any Due Process Safeguards.

---

[3]Plaintiff is aware of judicial immunity on monetary damages, but Plaintiff is seeking an Injunction which is permitted.

[4]Plaintiff is aware of judicial immunity on monetary damages, but Plaintiff is seeking an Injunction which is permitted.

25.    All Defendants knew that all their actions were unlawful.

26.    All Defendants conspired and agreed to force Plaintiff to move out of State or face jail time even though no crime was ever committed by Plaintiff.

This action is brought pursuant to 42 USC §1983, 1985, and 1988 Jurisdiction of this Court is invoked pursuant to 28 USC §1343(1) & (4). and ancillary and or pendent jurisdiction.

WHEREFORE, Plaintiff prays for the following relief:

1.    Money damages

2.    An injunction against all further prosecution

3.    An injunction to immediately revoke all Orders of Protection

4.    Any further relief this Court deems just and proper.

May 08. 2003

YAAKV M VANN
2005 ~~~~~~~~ LNE
LAS VEGAS NV
85117

4

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
--------------------------------X

YAAKOV M. VANN,

                Plaintiff

    -against-

STATE OF NEVADA,

                Defendant

HONORABLE DOUGLAS SMITH,

                Defendant

CLARK COUNTY, NEVADA

                Defendant

SARGENT KOSMIDES

                Defendant

LAS VEGAS METROPOLITAN POLICE DEPARTMENT

                Defendant

MISTER LORNE WYNE,

                Defendant

AKA "RABBI YITZ WYNE"

                Defendant

MISS. MICHELLE HALABE,

                Defendant

PETER DUBOWSKY

                Defendant

--------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR AN INJUNCTION**

## INTRODUCTION

Plaintiff is very well aware of the Federal Courts "abstention doctrine" from the Younger case, *Younger v. Harris,* 401 U.S. 37 (1971).   Plaintiff will however show how the facts of this case clearly demonstrate that the *Younger* case supports abstention in this case.

## ARGUMENT

The reason for abstention is stated by the courts to be:

-1-

Younger abstention is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims. See Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994) (citing Kugler v. Helfant, 421 U.S. 117, 124 (1975)).

*Schlagler Schlagler v. Phillips,* 166 F.3d 439.

The courts have of course refused to abstain in several cases and have given

the following reasons for doing so:

> Nevertheless, federal courts should still afford injunctive relief to a plaintiff who successfully establishes "the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that has always been considered sufficient to justify federal intervention." Younger, 401 U.S. at 48. Intervention would still be warranted upon a showing of "bad faith, harassment or any other exceptional circumstance that would call for equitable relief." Id. at 54. Generally, for such a showing to be made, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome. See Kugler, 421 U.S. at 126 n.6. But, a refusal to abstain is also justified where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass. E.g., Lewellen v. Raff, 843 F.2d 1103, 1109-10 (8th Cir. 1988), cert. denied, 489 U.S. 1033, 103 L. Ed. 2d 229, 109 S. Ct. 1171 (1989) (bad faith prosecution where brought in retaliation for exercise of First Amendment rights); Rowe v. Griffin, 676 F.2d 524 (11th Cir. 1982) (bad faith prosecution where brought after assurances of immunity to defendant).
>
> In such cases, a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the Younger doctrine, Bishop v. State Bar of Texas, 736 F.2d 292, 294 (5th Cir. 1984); Shaw v. Garrison, 467 F.2d 113, 119-21 (5th Cir.), cert. denied, 409 U.S. 1024, 34 L. Ed. 2d 317, 93 S. Ct. 467 (1972), and the expectations for success of the party bringing the action need not be relevant. See, e.g., Lewellen, 843 F.2d at 1109-10 (injunction justified regardless of expectations where prosecution brought to discourage exercise of constitutional rights). Abstention would serve no purpose because a state cannot have a legitimate interest in discouraging the exercise of constitutional rights, see, e.g., id. at 1110, or, equally, in continuing actions otherwise brought in bad faith, thereby reducing the need for deference to state proceedings.

*Cullen v. Fliegner,* 18 F.3d 96, 103, (2d Cir. 1994). Thus the courts have spelled out

very clear cases of when the courts should refuse to abstain. They are "the party

bringing the state action must have <u>no reasonable expectation of obtaining a favorable outcome</u>" and "a refusal to abstain is also justified where <u>a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct</u>, or <u>where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass.</u>" Only one of the above need be present.  Clearly in this case, ALL are present.

I

## THE STATE HAS SHOWN THAT IN THIS CASE, IT IS NOT AN ADEQUATE FORUM TO DECIDE CONSTITUTIONAL ISSUES, AND FURTHERMORE, THAT THE STATE FORUM IS BIASED TOWARDS DEFENDANT.

Not only did the Trial Judge deny Plaintiff[1] the opportunity to cross examine the perjury laden testimony, the trial judge totally prejudged and decided the case before any sworn testimony was given (actually there basically was no sworn testimony but rather only unidentified "testimony" from the peanut gallery without even identifying the speakers so that there could be no appellate record).  In fact, the second Protective Order was admittedly decided even before Petitioner entered the court room.[2]  Plaintiff was sentenced to jail without appointed counsel.[3]  Plaintiff was jailed for allegedly being less than five minutes late even though the other side was not present in court and

---

[1]Plaintiff and Petitioner in this case is Defendant in all State action referred to.

[2]Transcript Nov. 19th, Page 2.

[3]The Court knew that Petitioner was indigent as he had prepared a motion to proceed IFP in the appeal, yet no appointed counsel was provided, forcing a relative of Petitioner to go retain counsel and costs were not paid and so counsel did not even obtain the complaint filed with the LMPD (Metro Police) and thus amounted to inadequate counsel.

-3-

neither was Petitioner's appointed counsel in court as nobody answered the alleged

calling of the case.[4]  Finally, Petitioner has had to come to court five times with the sixth

one scheduled without even being provided any charges.

The state has proven that it is not an adequate forum to decide Constitutional

issues and the State has proven that any alleged charges are being brought for

harassment purposes and to keep Peititioner from exercising his First Amendment

rights of Freedom of Religion and Freedom of Speech

Wherefore, Petitioner therefore prays this Court will grant the Order to Show Cause and

Injunction in their entireties.

5/8/03

Yaakov m. Vann
Pro Se Plaintiff
2009 Madagascar Lane
Las Vegas, NV 89117
(702) 804-0351

WHEREFORE, Defendant prays this court will
1.   Enjoin the State from continuing its prosecution of the Defendant.
2.   Order the State Court to revoke the two Orders of Protection issued in violation
     of all Constitutional rights.

---

[4]Please see the Minutes on April 02, 2003.  Furthermore,
Petitioner was not even late.  Petitioner has a parking receipt
from Golden Nugget hotel which is on First Street, just two
blocks away, stamped at 8:48 a.m.  The Court Appearance was
scheduled for 9:00 and it does not take 12 minutes to walk two
blocks.

-4-

United States District Judge

**UNITED STATES DISTRICT COURT**
  **DISTRICT OF NEVADA**
---------------------------------X
YAAKOV M. VANN,

                          Plaintiff

    -against-                                  **AFFIRMATION OF YAAKOV M. VANN**
                                               **IN SUPPORT OF MOTION FOR**
STATE OF NEVADA,                               **INJUNCTION AND TRO**

                          Defendant
HONORABLE DOUGLAS SMITH,
                          Defendant
CLARK COUNTY, NEVADA
                          Defendant
SARGENT KOSMIDES
                          Defendant
LAS VEGAS METROPOLITAN POLICE DEPARTMENT
                          Defendant
MISTER LORNE WYNE,
                          Defendant
AKA "RABBI YITZ WYNE"
                          Defendant
MISS. MICHELLE HALABE,
                          Defendant
PETER DUBOWSKY
                          Defendant
---------------------------------X

        Yaakov M. Vann, affirms (on religious grounds) as follows:

I am being criminally prosecuted in retaliation for exercising my First Amendment Constitutional

rights of Freedom Of Religion and freedom to criticize pubic figures. It should be noted that I

never violated any law. I was brought before the State Courts for Defendants Mr. Wyne and Ms.

Halabe to unlawfully seek an Order of Protection. Neither Defendant met the state standards of

obtaining said Order but the Federal Court is certainly not interested in that aspect. <u>This Federal</u>

-1-

Court should and must be interested that despite three requests on the Record[1] for cross

examination, none was permitted. This Court must be concerned that despite objecting to my

witnesses not being permitted to testify,[2] they still were not permitted to testify and thus I was not

permitted to defend said utterly false and baseless charges. Then again, does a Judge that has

decided a case before hearing any evidence need to offer cross examination.[3]predeceda a

caseThis Court must be interested in the fact that any further proceedings are just for the purpose

of harassment. I was forced to come to Justice Court on March 21, April 01, April 02, April 03,

April 24[4], May 06 and now May 08 is the next court appearance. I HAVE NOT ON ANY OF

THOSE DATES BEEN CHARGED WITH ANY CRIME OR VIOLATION. I JUST HAVE TO

SHOW UP IN COURT TO MAKE SURE THAT I CAN'T EARN A LIVING AND THAT MY

KIDS CAN'T GO TO SCHOOL.[5] There are clear requests on the record to be provided with any

alleged charges but they have never been provided in violation of *IN RE OLIVER*, 333 U.S. 257,

---

[1] Enclosed Transcript of 11/08/02 page 17, line 19; page 19 line 5; and page 20 line 14

[2] Enclosed Transcript of 11/08/02 page 27 line 7.

[3] Please see Transcript of 11/08/02 page 4 line 1 where I was ordered to stay five blocks away, this occurring before any sworn testimony. Therefore does this Court really have to read the 25 plus pages of the transcript if the case was decided before it began.

[4] May 24th date was changed with no notice by the Court to Defendant. Court changed date apparently due to the fact that my wife arranged to be in town so that if Judge Smith jailed me again, the kids would not have to go to Foster homes. The Court date was therefore adjourned to a date after she was no longer in town.

[5] My children attend Piggott Elementary School and drop off is not until 8:30 and most calandar appearances have been 8:30 downtown(except for the day Judge Smith put me in jail, that appearance was scheduled for 9:00).

-2-

<u>275.</u> THE COURT AND THE DEFENDANTS, WYNE, DUBOWSKY AND HALABE ARE

CLEARLY JUST HARASSING THE PETITIONER.

Petitioner is being injured well beyond having to bear the burden of defending a criminal

trial. My wife is in her ninth month of pregnancy, and each court date comes with immense

pressure of providing for our three kids for the likelihood that Judge Smith will throw me in jail

with no legal justification. When a Judge says each time before you appear before him that he

will put you in jail and he actually does; any worries on the part of my pregnant wife is totally

justified. <u>Additionally, despite being sentenced to jail, no appellate counsel has been appointed</u>

<u>despite several requests in further violation of Supreme Court Law.</u>


Lastly, please don't decide that are any state remedies to be had. A notice of appeal was

immediately filed after the first protective order but the same Judge Smith denied my motion to

proceed IFP even though he essentially ended my business without any Due Process safeguards.[6]

I do not have funds to challenge any rulings in state courts.

Petitioner therefore prays this Court will grant the Order to Show Cause and Injunction in their

entireties.

May 08  2003

Yaakov m. Vann
Pro Se Plaintiff
2009 Madagascar Lane
Las Vegas, NV 89117
(702) 804-0351

---

[6]Please see Transcript of 11/08/02 pages 19 et seq. where the Judge
clearly does not care that he just terminated my business.  A lot
of my inventory perished at the property on Arville Lane while I
was not permitted to go and retrieve it.

-3-

**UNITED STATES DISTRICT COURT**
  **DISTRICT OF NEVADA**
--------------------------------X
YAAKOV M. VANN,

                Plaintiff

    -against-

STATE OF NEVADA,

                Defendant

               **ORDER TO SHOW CAUSE**
               **FOR PRELIMINARY INJUNCTION**
               **AND TEMPORARY RESTRAINING**
               **ORDER**

HONORABLE DOUGLAS SMITH,
                Defendant
CLARK COUNTY, NEVADA
                Defendant
SARGENT KOSMIDES
                Defendant
LAS VEGAS METROPOLITAN POLICE DEPARTMENT
                Defendant
MISTER LORNE "YITZ" WYNE,
                Defendant
AKA "RABBI WYNE"
                Defendant
MISS. MICHELLE HALABE,
                Defendant
PETER DUBOWSKY
                Defendant
--------------------------------X

     Upon the affidavit of Yaakov M.. Vann, sworn to the 07th day of May, 2003, and upon

the copy of complaint hereto attached it is ORDERED, that the above named defendants show

cause before a motion term of this Court, at Room      , United States Courthouse,

           in the county of Clark, State of Nevada        , 2003, at

o'clock in the thereof, or as soon thereafter as counsel may be heard, why an order should not be

issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the defendants

during the pendency of this action from prosecuting Yaakov Vann on charges of violating an

Order of Protection which was granted in total violation of all due process rights, including but

-1-

not limited to the right of confrontation of accusers in violation of *WILLNER v. COMMITTEE ON CHARACTER AND FITNESS*, 373 U.S. 96; 83 S. Ct. 1175 and the right to put on a defense. The Justice Court further violated the Constitution and the United States Supreme Court by sentencing the Planitiff to jail time without first affording appointed counsel for the indigent Plaintiff in violation of *ARGERSINGER V. HAMLIN*, 407 US 25, 32, 92 Sct 2006 (1972) and *ALABAMA v. SHELTON*, 535 U.S. 654; 122 S. Ct. 1764.  Finally, Plaintiff has been jailed in violation of *U.S. v. JORDAN*, 2003 U.S. App. LEXIS 7391 and *U.S. v SELTZER*, 227 F.3d 36. It is further ORDERED, that sufficient reason having been shown therefor, pending the hearing of plaintiff's application for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the defendants are temporarily restrained and enjoined from prosecuting Yaakov Vann on charges of violating an Order of Protection and or Contempt of Court for violating the Order of Protection, and it is further ORDERED, that a copy of this order and attached affidavits be served free of charge to Petitioner by the United States Marshall  upon defendants or an acceptable agent in their office on or before                                    and that such service be deemed good and sufficient.


Dated:

-2-

```
 1   TRAN
     CASE NO. PROTECTIVE ORDER
 2
 3       IN THE JUSTICE'S COURT OF LAS VEGAS TOWNSHIP
 4            COUNTY OF CLARK, STATE OF NEVADA
 5
 6   MICHELLE HALABE,                 )
                                      )
 7            Plaintiff,              )
                                      )
 8       vs.                          )   CASE NO. 02P00983X
                                      )
 9   YAAKOV VANN,                     )
                                      )
10            Defendant.              )
     _____)
11
12
13               REPORTER'S TRANSCRIPT
14                       OF
15                  PROCEEDINGS
16       BEFORE THE HONORABLE DOUGLAS SMITH
                JUSTICE OF THE PEACE
17
                FRIDAY, NOVEMBER 8, 2002
18
19   APPEARANCES:
20     For the Plaintiff:        IN PROPER PERSON
21
       For the Defendant:        IN PROPER PERSON
22
23
24   Reported by: Therese Ferriola, CCR #314
25
```

```
 1       LAS VEGAS, NEVADA, NOVEMBER 8, 2002, 8:30 A.M.

 2

 3                          *  *  *  *  *

 4

 5              THE COURT:  All right, Yaakov Vann.

 6              THE BAILIFF:  He's down the hallway.

 7              THE COURT:  Right here.  And Michelle

 8   Halabe is on this side.

 9                   Where is he?

10              THE BAILIFF:  Coming in.

11              THE COURT:  Mr. Vann, this is the time set

12   for a protective order.  This is what it says, and

13   if I mispronounce your name, I apologize.  You can

14   have a seat.

15              MR. VANN:  Thank you.

16              THE COURT:  Yaakov Vann has been told not

17   to come to our synagogue and has continuously showed

18   up on Shabbat thinking we wouldn't do anything

19   probably due to the Jewish law not being able to

20   telephone police except in emergency, so the shul

21   hired a private agency to keep him off of property

22   for three weeks, even though he continued to show up

23   and bully people.

24                   Do you keep going to temple, to the

25   synagogue?  Everybody in here says yes.
```

THERESE FERRIOLA
OFFICIAL COURT REPORTER
(702) 455-3048

```
 1              MR. VANN:  I am not on synagogue property.
 2   I do go to talk to various congregants and I --
 3              THE COURT:  Why do you go there when you
 4   were told not to go?
 5              MR. VANN:  I don't go on the synagogue
 6   property.  I understand they have the right to
 7   exclude and I cannot go on synagogue property.  I do
 8   occasionally go talk to various congregants about
 9   the issue.  Not everybody agrees with the position,
10   that I should be excluded.
11              THE COURT:  Everybody in here today seems
12   to agree.
13                   Anybody in here that disagrees that
14   he should be kept off the synagogue property or out
15   of the synagogue?
16              MRS. VANN:  Your Honor, may I say
17   something?
18              THE COURT:  Yes.
19              MRS. VANN:  I am the defendant's wife.
20   Okay.  My husband knows better than to go on
21   property he was told not to, and I know for a fact
22   that he did not.
23              THE COURT:  Okay.  Thanks.
24                   Well, here is the problem:  You're
25   going to have to change synagogues if you want to
```

```
 1   attend these services.  You're now going to have to
 2   stay away from the vicinity.  I want you to stay at
 3   least five blocks from the vicinity.  Stay away from
 4   them, because there are people there, if there's any
 5   support in there, supporters, and I'm not of the
 6   Jewish faith, they can vote, I assume they can vote,
 7   on whether this should be overturned.  But that's
 8   why they hire Rabbis.
 9                Is that right, counsel?
10          MR. KRAH:  I think so.
11          THE COURT:  I mean the Rabbi is the one
12   that kind of runs things.
13          MS. HALABE:  We have an order of
14   protection.
15          THE COURT:  I know a couple Rabbis, Rabbi
16   Hect (phonetic).  Well, he doesn't know me as well
17   as I think I know him.  He is a wonderful man.  And
18   I don't think he would like this type of activity at
19   his synagogue.
20                We have another protective order that
21   has been in place signed by Judge Abbatangelo.  The
22   name is spelled differently.  So we have one in
23   place for a year.
24                I want it known that these
25   individuals that attend the synagogue and temple
```

1  with Rabbi --

2         MS. WYNE:  Yitzchak Wyne.  That's my

3  husband.

4         THE COURT:  That they feel safe and they

5  don't want you around.  And I'm sorry it's to that

6  point, but it's got to be.

7         MR. KRAH:  Good morning.  For the record,

8  your Honor, James Krah appearing from the office of

9  Jeffrey Shaner.  I believe the defendant fired off a

10 bunch of different subpoenas, and I came over here

11 on behalf of Rabbi Harlig who is the director of

12 Chabad of Southern Nevada, and Rabbi Rodman is here

13 too back in the crowd, the principal of Desert Torah

14 Academy.

15        We don't know what's going on between

16 these two parties, but somehow different Rabbis are

17 involved in this, and we need to straighten out the

18 subpoena issue.  He sent Rabbi Harlig a subpoena

19 yesterday which was a little improperly done, no

20 witness fees, no notice, to produce certain things.

21 And, if I understand, this case is going to be

22 rolling around over here for about a year.

23        THE COURT:  Let me see.  Well, no.

24        I think we should talk about it.  Why

25 can't you stay away from these people if they don't

```
 1   want you there?  They don't want you around.  I
 2   mean, is that real clear?
 3              MR. VANN:  Yes, it's --
 4              THE COURT:  It's real clear, because I
 5   don't want to put someone in jail for this, but
 6   that's what I do.  I have a jail cell over there
 7   waiting for you.  And if you don't stay away from
 8   them, that's what's going to happen.
 9              You have a child out there.  You'll
10   be taken away from your child.  You have a lovely
11   wife.  You need to focus your energy there.
12              I'm not sure why these subpoenas were
13   sent.  I'm sure the Rabbis have more important
14   business than to be in this courtroom.
15              MR. KRAH:  Well, here is the problem we
16   had with it too.  You'll notice on your right-hand
17   side he's looking for information regarding the
18   admission, applications, and scholarship information
19   for various and sundry students.  I think that's
20   absolutely irrelevant to the issue before the Court.
21              THE COURT:  Actually, it isn't.  It is
22   totally relevant because it shows me that you're not
23   thinking clearly if you want all of this stuff.
24   This is private information; it isn't for
25   publication.  You ain't getting it.
```

1      MR. KRAH:  The one on the left-hand side
2  requires a cook book from the Rabbi.
3      THE COURT:  If I have to protect the
4  Rabbi, I can.  I've got a guy here who's got
5  handcuffs.  We have already opened the cell.  It's
6  ready to go.
7          Are you going to stay away from these
8  people, Mr. Vann?  They don't want you.  I want to
9  make this real clear:  They don't want you around.
10  Now, I don't know why, and I really don't want to
11  know why.  I can open a hearing.  We can air dirty
12  laundry.  There can being accusations on this side,
13  there can be accusations on this side, and then I'll
14  make decisions.
15          Now, I deal with murder, I deal with
16  robbery, I deal with very serious cases.  It is sad
17  that now I have to get in the middle of a religious
18  conflict.  I am not very happy about it, because
19  people go there as a sanctuary and to be safe and to
20  not have to be bothered and to worship.
21          Now, if you want to worship or if you
22  want your child in a school somewhere, it sounds to
23  me like you're going to have to go somewhere else,
24  not there.  They don't want your child there.  They
25  likely turned somebody down.  That must be what it

```
 1   is.  Well, if it is, I'm sorry.  Go somewhere else.
 2   I think that pretty much sums it, doesn't it?
 3              People need to be safe.  They just
 4   need you to be away.  That's all they want.  So find
 5   somewhere else to go.  Focus your energy somewhere
 6   else.
 7              What do you have to say?
 8              MR. VANN:  I would like the hearing that I
 9   believe I'm entitled to get.
10              THE COURT:  You're getting it.
11              MR. VANN:  Thank you.
12              THE COURT:  This is the hearing.  The
13   hearing is you respond to these allegations.  Be
14   sworn in.  Stand up and be sworn in.
15
16                        YAAKOV VANN,
              having affirmed to tell the truth
17                   testified as follows:
18
19              THE COURT:  All right.
20              MR. KRAH:  Before we continue,
21   your Honor --
22              THE COURT:  No, no, I will handle this.
23              MR. KRAH:  Okay.
24              THE COURT:  I'm adapt at handling this
25   because I put people in jail for not staying away
```

1   and for harassing people.

2              All right.  You have been told not to

3   come to the area, yet you still come; is that true?

4              MR. VANN:  I have been told not come to

5   the synagogue.

6              THE COURT:  So what you do is you go near

7   it but you don't go on the property; is that what

8   you're telling me?  That's what I heard you say.

9              MR. VANN:  I have spoken only to people

10  who want to speak with me, and I have not spoken to

11  people that don't want to speak with me.  And not

12  everybody agrees with the decision to exclude.

13             THE COURT:  The head guy of the synagogue

14  is who?

15             MR. VANN:  Presumably Mr. Wyne.

16             THE COURT:  Who is the head of the

17  synagogue?  Who is the head of the synagogue?

18             THE MS. HALABE:  Rabbi Yitzchak Wyne.

19             THE COURT:  Where is the Rabbi?  Is the

20  Rabbi here?

21             MS. WYNE:  No, he is not.  I am his wife

22  and we have -- my husband has a protective order

23  against --

24             THE COURT:  Let me see that.  Where's Tom?

25             THE BAILIFF:  Right here.

```
 1              THE COURT:  Does Rabbi Wyne want Mr. Vann
 2   at the synagogue?
 3              MS. WYNE:  No, absolutely not.  We do not
 4   want him at the synagogue, near our family, near the
 5   school where my children go, near my home.  He has
 6   harassed us at my home, at the synagogue, at the
 7   school.  He's harassed my mother at the supermarket.
 8              THE COURT:  Okay.  So we've cleared that
 9   up.  You say you haven't.  They say you have.  And I
10   have a number of people here that I assume are going
11   to verify that.
12              Is that right?
13              UNIDENTIFIED SPEAKER:  Easy, yes.
14              THE COURT:  It's affirmative, so you lose
15   that issue.  The people all said yeah.  Apparently
16   you're bullying people.  They don't like that.  The
17   police had to show up three times.
18              MS. WYNE:  Six times.
19              THE COURT:  Six times.
20              MS. WYNE:  Sergeant Kosmides knows.
21              THE COURT:  Were you ever arrested there?
22              MR. VANN:  No.
23              THE COURT:  Did you leave before the
24   police got there?
25              MR. VANN:  I was there once, the affidavit
```

1  is false, the one from Mr. Wyne about October 12th,

2  because I was detained and no crime was committed.

3          THE COURT:  You shouldn't tell me that a

4  Rabbi is falsifying things because I get really --

5          MS. HALABE:  Your Honor, on Friday the

6  18th of October --

7          THE COURT:  Just a minute.  He came to

8  school and whipped his car around the corner and

9  honked at me and Rebbetzin Wyne like he was going to

10  hit us.

11          MS. WYNE:  Your Honor, I was in the car at

12  the time.

13          THE COURT:  Do you want me to take your

14  driver's license away from you?  Is that what you

15  want, because I will do it.  Did you do that?

16          MR. VANN:  No, absolutely not.

17          THE COURT:  So they are liars again,

18  everybody in here is a liar except you?  Do you want

19  me to believe that?

20          MR. VANN:  If you want to believe it.  Did

21  the Rabbi say he saw it or did he just put hearsay

22  in his affidavit?

23          UNIDENTIFIED SPEAKER:  There were no

24  Rabbis out there at the time when he sped towards

25  him.

1           THE COURT:  These people are afraid for

2    their welfare?  Why did you subpoena these records

3    and applications for admission to Desert, I'm sorry,

4    I can't read this, is it Torah Academy?

5           MS. WYNE:  Torah.

6           THE COURT:  To the preschool for all of

7    Lorne Yitzchak Wyne's -- is that --

8           MS. HALABE:  That's the Rabbi.

9           THE COURT:  -- kids for all years

10   attended.  That is crazy.  You are not entitled to

11   it.  Thank you.  Scholarship applications for all of

12   Lorne Yitzchak Wyne's kids and all of Rabbi is it

13   Yisroel Suzff's, S-u-z-f-f, kids for all years

14   attended.  You don't like these people; is that

15   fair?

16           MR. VANN:  No, not fair.

17           THE COURT:  It is not fair?

18           MR. VANN:  Correct.

19           THE COURT:  Why do you want these records?

20           MR. VANN:  I believe they would be

21   relevant in a full hearing.

22           THE COURT:  For what?

23           MR. VANN:  With the hearing, it would come

24   out.

25           THE COURT:  Tell me what they are relevant

```
1    for?  I have asked you.  What are they relevant to
2    show?
3             MR. VANN:  In one particular instance they
4    are trying to prevent my kids from getting a Jewish
5    education.  They are alleging things that never
6    happened.
7             THE COURT:  There are other Jewish
8    schools.  You better find one.  They don't want you
9    at this one.  They don't want you at this one.
10            MR. VANN:  Is that Rabbi Harlin's
11   position?
12            MRS. VANN:  Excuse me.  There are no
13   Jewish schools that are religious in the area at
14   all.
15            THE COURT:  What about the Hebrew Academy?
16            MRS. VANN:  That is not religious.
17            THE COURT:  And Temple Beth Shalom has
18   one.
19            MRS. VANN:  It is not religious.
20            MR. VANN:  Did Rabbi Harlin say he didn't
21   want my kids?  He told me he wanted my kids and he
22   had been arranging to bring them in and out.
23            MR. KRAH:  I think that's something that
24   they might wish to work out.  I was here
25   fundamentally to move to quash these on the basis --
```

```
 1              THE COURT:  Well, the subpoenas are
 2   quashed.  Application for admission for --
 3              MR. VANN:  You can quash the whole thing,
 4   your Honor, you don't have to read it.
 5              THE COURT:  Who is that?  U-a-l-a-b-e-s
 6   kids' scholarship application is it H-a-l?
 7              MS. HALABE:  That's me, Halabe.
 8              THE COURT:  So you want all of these
 9   applications.  So what you want, if I understand it,
10   is you're kind of ticked off that they won't let
11   your kids in or give your kids scholarships but they
12   give all of these other kids scholarships.
13              MR. VANN:  My kids are in the school.  My
14   kids are not excluded from the school.  My kids are
15   welcome in the school.
16              THE COURT:  Is that right?
17              MR. VANN:  Rabbi Rodman is here.  He's the
18   principal.
19              THE COURT:  Where is Rabbi Rodman?  Is
20   that right?  His kids are in the school?
21              RABBI RODMAN:  His children are in the
22   school, yes, sir.
23              MR. VANN:  Are they welcome to stay?
24              RABBI RODMAN:  Yes; yes, they are.
25              THE COURT:  Okay.
```

```
1              MS. WYNE:  Your Honor, my children are in
2    school.  On a regular basis throughout the year,
3    Yaakov Vann has approached them at the school and at
4    my -- at the synagogue and saying very inappropriate
5    things to them.  I have it all on record the things
6    he has said to them.  I fear their lives are in
7    danger, my life is in danger, my husband's life is
8    in danger.  He has made it public knowledge to many,
9    many people in Las Vegas, around the country, and in
10   Israel that his goal is to destroy Rabbi Wyne and
11   his family.  And he has made that clear.  He has
12   told the head of the National Counsel of Young
13   Israel in Jerusalem.
14             THE COURT:  Have you said those things?
15             MR. VANN:  I haven't said it to that
16   extent.  I have said that I believe he's not
17   ordained as a Rabbi, that he has what's called
18   ravimakismu (phonetic).  A real Rabbi has yora yora
19   snesha (phonetic) which is knowing the code of
20   Jewish law.  He never tested for that.  He doesn't
21   know it.
22             THE COURT:  Well, what put you in place to
23   be the judge?
24             MR. VANN:  I'm just a congregant.  I have
25   a right to voice my --
```

1        MS. WYNE:  Your Honor, he's not a

2   congregant.

3        THE COURT:  You had something you wanted

4   to say, Rabbi?

5        RABBI RODMAN:  Your Honor, I just want to

6   clarify one issue.  Desert Torah Academy is a

7   separate issue from Young Israel, and we have not

8   asked for a court order for anyone to be off of our

9   property.  I, first of all, do want to clarify that;

10  however, obviously I want to protect my children

11  very much.  And I happen to be on pretty good terms

12  with Mr. Vann, I would like to suggest a solution.

13       THE COURT:  I wish you would.  And I think

14  the Rabbis can probably settle this the best between

15  them.  All right.

16       RABBI RODMAN:  He has my cell phone

17  number.  Every time if he -- first of all, his wife

18  Shirley can bring the kids to school.  If not, if he

19  brings the kids to school, he can call me from a

20  block away, and I will personally meet his children,

21  escort them to school.  And at the end of the day, I

22  will personally escort them back to his car so he

23  doesn't have to come on our property.  And his

24  children can attend the school, and everyone can be

25  safe and happy.  I will take that upon myself to do

1   that.  You know, of course, some days I am not

2   there, but I am there 95 percent of the time.  He

3   can just call me and I will escort the children onto

4   our property.

5            MS. WYNE:  Right now the restraining order

6   that my husband has includes Desert Torah Academy.

7   It does not matter if he gets --

8            THE COURT:  But that is separate from the

9   synagogue?

10           MS. WYNE:  But every morning and afternoon

11  we have to see him.  And he came and sped towards us

12  in the parking lot there, and he also chased after

13  Michelle with witnesses we have.  And he has done

14  very dangerous things.  And to be a block away from

15  the school, to me, is also very dangerous.  And his

16  wife, his wife could easily take the kids to school.

17  There's no reason he should be there.

18           THE COURT:  What do you have to say?

19           MR. VANN:  I would like her sworn if she

20  is going to give testimony.  I would like to have

21  cross-examination.  Please swear her in and let her

22  take the stand.

23           THE COURT:  What do you have to say?

24           MS. HALABE:  I just want to tell you that

25  I spoke this morning to --

```
 1            THE COURT:  I need you to be sworn in too.
 2    Unless I am mistaken, this is my courtroom, but I
 3    will swear in who I want to swear in.
 4
 5                    MICHELLE HALABE,
 6            having been first duly sworn, was
 7            examined and testified as follows:
 8
 9            THE COURT:  What do you have to say?
10            MS. HALABE:  I just want to say that this
11    morning I spoke with Sergeant Kosmides who's been
12    helping us with this.  She's come out and is sending
13    detectives out.  And she wanted to come, but she
14    says she has to be subpoenaed, and I didn't know
15    this was going be a big deal.  I thought I was going
16    to come in and be alone.  I just don't want him
17    around any of my kids or me.  I am afraid for my
18    life.
19            THE COURT:  How do you keep him away from
20    the school?
21            MS. HALABE:  I think the Rabbi had a good
22    solution by having either his wife drop off the kids
23    and take them or having the Rabbi have him call the
24    Rabbi and drive them back and forth.  You know, he
25    can easily stay away from the schul and still have
```

```
 1   their kids go to school there.
 2          THE COURT:  I think it's very reasonable
 3   for the Rabbi to have made that offer.  What do you
 4   think?
 5          MR. VANN:  I believe it's reasonable for
 6   the Rabbi to make the offer.  But, first of all, I
 7   would still again like Mrs. Wyne to be sworn in and
 8   afforded cross-examination.
 9               Second of all, I earn my livelihood
10   supplying kosher food throughout the entire
11   community and that includes the kitchen at the
12   school at Arville.
13          THE COURT:  You're going to have to get
14   somebody to deliver it to the school.
15          MR. VANN:  If it weren't for me, every
16   person coming to Comdex won't eat, every person
17   coming to the jewelry convention won't eat.
18          MS. WYNE:  Your Honor, there is other
19   kosher caterers in town.
20          THE COURT:  I know.
21          MR. VANN:  I'm not simply a caterer, I am
22   the wholesaler.
23          MS. WYNE:  What we're talking about, if
24   you look into his background, please, in the other
25   places he's lived, they have sent him away, the
```

1  other Rabbis in New York.

2          MRS. VANN:  That's wrong, that is a lie.

3          MS. WYNE:  In New York, Rabbi Pearl in

4  New York --

5          MRS. VANN:  That is a lie.  Where is your

6  affidavit?  Where's your affidavit?  It's a lie.

7              She can't -- that's hearsay.

8          MS. WYNE:  Look into his arrest records.

9          THE COURT:  Let's do this:  Do you have

10 anything you could submit to the Court?

11         MS. WYNE:  And he lives a couple blocks

12 away from the synagogue.

13         THE COURT:  It's in the folder?

14         MR. VANN:  Can I ask, again, to please

15 swear her in?

16         THE COURT:  This isn't your courtroom, it

17 is my courtroom.

18         MS. WYNE:  And my husband knew he wasn't

19 asked to come down here because this was Michelle's

20 restraining order.  And so my husband would have

21 gladly been here along with any other witnesses we

22 would need.

23         THE COURT:  Let me read through.

24         MS. WYNE:  There is a polo match

25 association who he has been harassing who's also

```
 1   right now in the process of trying to figure out
 2   what to do with him.
 3               THE COURT:  It would seem to me that
 4   there, through the hierarchy of the Jewish religion,
 5   and correct me if I'm wrong, Rabbi, that you guys
 6   can take some religious action; is that right?  Is
 7   that possible?
 8               MS. WYNE:  Yes, my husband --
 9               RABBI RODMAN:  Absolutely, yes, but not
10   protective --
11               THE COURT:  I will handle the protective
12   order.  But I am saying religiously there should be
13   some way to handle this, Rabbi.
14               RABBI RODMAN:  Absolutely, there are many.
15               THE COURT:  That is truly what should
16   happen with this.  And it doesn't sound like, to me,
17   Mr. Vann, you're very reasonable.  Your wife is
18   angry.  There's a lot of emotions in this.  But from
19   my religion that I have, if we have a beef with
20   somebody in our religious area --
21                   That's all right.  I have children.
22               MR. VANN:  Thank you, your Honor.
23               THE COURT:  -- the head of our religious
24   area handles the problem between the people
25   religiously.  I have a sense that you wouldn't
```

```
 1   listen to them.  I just have a sense.  I don't know
 2   why, but I do, especially on having problems during
 3   religious times.
 4               It says here on September 16th, on
 5   the Jewish High Holy Day, I mean, to me, that should
 6   be like you really need to have more protection on
 7   that day because people are trying to communicate
 8   with their God.  And it sounds to me like you're an
 9   obstructionist, that you've had problems in other
10   areas.  You never had a problem in another area?
11               MR. VANN:  Such as?
12               THE COURT:  Pardon?
13               MR. VANN:  Such as?  I have never been
14   convicted of a crime.
15               THE COURT:  I didn't say you were
16   convicted of any crime.  You tell me, have you had
17   problems with other Rabbis?  The hesitation is the
18   answer.  The hesitation is the answer.
19               MR. VANN:  This is great.
20               THE COURT:  No, it is not the answer?
21               MR. VANN:  Disagreements, yes.
22               THE COURT:  It is.
23               MR. VANN:  Can you clarify what you mean
24   by problems?
25               THE COURT:  I don't have to clarify.  You
```

1  did it for me by your silence.  Let me read this

2  now.

3                September 16th, disrupting prayer

4  service on the Jewish High Holy Day, Vann attempted

5  a physical confrontation with a congregant both in

6  the children's room and in the main sanctuary in

7  front of the entire congregation.

8                Doesn't it embarrass you?

9        MR. VANN:  It did not happen and there are

10  people here --

11        THE COURT:  Did it happen?  Were you

12  there?  Just tell me yes or no if you were there.  I

13  mean, that's easy.

14        MR. VANN:  I wasn't at that --

15        THE COURT:  Okay.  Was there anybody here

16  at that time?

17        MS. WYNE:  Yes.  We had a babysitter who

18  watches the children in the back children's room and

19  as soon as I walked in, the babysitter from an

20  agency came up to me and said there was a young man

21  with an old man, and then we figured it out it was

22  him and the Rabbi from Brooklyn, and they almost

23  came to blows in front of the kids.  And they said

24  that it was obvious that the younger man was, you

25  know, being aggressive towards the older man.  The

1   children then reported that it was very scary.   And

2   the children that come in contact with him are

3   afraid of him.

4              And I have also seen him in the past,

5   he picked up a child who lives in Memphis now and

6   shook him.   And another time he pushed a child.

7   There was a kid in the shul who through a bug at

8   him.   He pushed his face down at this bug and

9   threaten he was going to make him eat it.   And all

10  the children witnessed this.   And I have seen the

11  way he treats his own children, who are very sweet

12  children, and he treats them like garbage in front

13  of us.

14             THE COURT:   He again was trespassed on

15  October 5th.   Metro was dispatched.   Metro warned

16  you at that time not to come on the property?

17             MR. VANN:   I'm sorry, which day?

18             THE COURT:   October 5th.   And then you

19  returned later?

20             MR. VANN:   No, I didn't see Metro on

21  October 5th at all.

22             MS. HALABE:   He slammed the door in

23  Sergeant Kosmides' face when they wanted to talk to

24  him.

25             THE COURT:   He again was trespassed

1   October 12 and threatened as he saw Metro being

2   dispatched from the scene.  After fleeing the

3   synagogue, he went to the Rabbi's house located at

4   1805 Grand Rodeo, Las Vegas, waited for the Rabbi's

5   wife and small children to come out.  As they walked

6   to the synagogue, Mr. Vann chased after them,

7   approached them, and verbally harassed them.  Later

8   he stalked the synagogue in the afternoon.

9   October 18th, he stalked the Rabbi's mother-in-law

10  and child in the parking lot of Albertson's on Fort

11  Apache and Sahara, verbally assaulting her.

12              I apologize for not knowing

13  everything about your religion, but is there a Rabbi

14  that's like a over the Las Vegas area?

15          MS. WYNE:  Before thinking about filing

16  any restraining orders, we called.

17          THE COURT:  I just need an answer.  Is

18  there a Rabbi that advises over the whole area?

19          RABBI RODMAN:  No.

20          THE COURT:  No?

21          MS. WYNE:  But there is a Rabbi in

22  California who is a great Rabbi who everyone knows,

23  Rabbi Union.  And my husband called him to see if he

24  could settle the matter.  And he said based on

25  Yaakov Vann's history, Yaakov Vann would not listen

1   to any rabbi or religious court so that he could not

2   help us, so we would have to go -- he recommended to

3   my husband that we would have to go the civil route

4   to go, you know, a secular court for this.

5          MR. VANN:  Your Honor, besides that being

6   hearsay, I called Rabbi Union and Rabbi Best myself.

7   I know Rabbi Best.  I have learned daily with Rabbi

8   Best.  I went to his congregation.  He won't testify

9   that I disrupted his congregation.  Rabbi Rodman in

10  the back --

11         THE COURT:  What about the other rabbi?

12         MS. WYNE:  There is Rabbi Pearl in

13  New York.

14         THE COURT:  No, in California.

15         MS. WYNE:  That is Rabbi Union, the one I

16  just told you.

17         THE COURT:  What about Rabbi Union?  Have

18  you contacted Rabbi Union?

19         MR. VANN:  I don't know who he is.  I

20  spoke to him on the phone because in charge of the

21  Jewish court in California.  They won't take the

22  case.  Her husband, Mrs. Wyne's, has been before

23  that court already when he got fired from the other

24  congregation in this town.

25         MS. WYNE:  Rabbi Union, we tried to go

1   through Rabbi Union, but there is another Rabbi in

2   Long Beach, California, Rabbi Newman, who's the head

3   of the Hebrew Academy where Rabbi Rodman used to

4   work, and he also had a lot of trouble with Yaakov

5   Vann.  And then there's the Rabbi before that in

6   New York, Rabbi Pearl.

7         MR. VANN:  Your Honor, this is all

8   hearsay.  I have witnesses I would like to call.

9         THE COURT:  I want affidavits.  I want

10  affidavits from everybody if we're going to do this

11  by affidavit.  I want to pass this 30 days.  You are

12  to stay away.  You're not even to go close.  And I

13  am going to call the sergeant, and if you're close,

14  I want you arrested without bail.  You'll be held

15  until I can hear the case.  I don't want you near

16  that place during this 30-day period.

17              I want affidavits from everybody,

18  sworn affidavits.  If you can get them from the

19  Rabbis, get them from the Rabbis.  We're going to

20  pass this 30 days.  If there's any problems, I am

21  calling the sergeant, and I want you arrested.

22        MS. WYNE:  Your Honor, one of the problems

23  that we have run into is this is what the Rabbis

24  have told us, the Rabbi in New York says Yaakov Vann

25  is known for suing everyone.  So the Rabbi in

 1    New York said, you know, if needed, I will put it in

 2    writing for you, he said.  But he sues everyone.

 3    The Rabbi in Long Beach is afraid of being sued.

 4    Chabad is afraid of being sued.  Peccole Ranch

 5    Association is dealing with a lawsuit.  All he does

 6    is sue people.  And everyone is afraid that they are

 7    going to be sued by him.

 8              THE COURT:  Well, we're going to take a

 9    stand.  Somebody in here, your husband, someone's

10    going to have to give me an affidavit.

11              MS. WYNE:  Well, my husband --

12              THE COURT:  I mean, lawsuits may happen.

13    How far do you live from the synagogue?

14              MR. VANN:  I intentionally bought the

15    closest home because all I have to do is just walk

16    to synagogue.  They don't drive.

17              THE COURT:  I understand.

18              MR. VANN:  And I wanted to be part of the

19    community.  They accepted my membership, they

20    accepted my checks, lots of donations.  I also

21    worked in their kitchen.  I have the checks showing

22    that I paid for the certification on the kitchen, on

23    my food products that I deliver to hotels.

24              THE COURT:  I'm going to look at all of

25    this paperwork you submitted.

```
 1              Is there anything you want to submit
 2   to me?  I will look at it.  I want anything anybody
 3   in the congregation wants to submit to me and in
 4   affidavit form, 30 days.  But you stay away.
 5              MR. VANN:  Your Honor, that's unfair to my
 6   witnesses that have come today to testify that they
 7   have -- to not get heard and have to come back at
 8   another time.  And it's fair for affidavits which
 9   you know are not subject to cross-examination?  I
10   saw this affidavit.  It doesn't even allege
11   firsthand knowledge.  And, in fact, none of it is
12   firsthand knowledge.
13              THE COURT:  This protective order will go
14   into effect.
15              Call Kathy.  It's in effect.  You are
16   to stay away, five blocks.  If you have to move, you
17   move.  It's in effect.
18              MS. WYNE:  He lives two blocks --
19              THE COURT:  I wanted to do it civilly and
20   do some more research into it.  I'm satisfied that
21   you're a threat to those people, and I'm going to
22   put in the affidavit.
23              Now the protective order is there.
24   You have now convinced me that it needs to be there
25   because I think you're crazy.
```

1                      Thank you.

2

3         (Whereupon, the proceedings were concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  STATE OF NEVADA )
                   ) ss.
 2  COUNTY OF CLARK )

 3

 4            I, THERESE FERRIOLA, a duly

 5  commissioned limited notary public and certified

 6  court reporter, County of Clark, State of Nevada, do

 7  hereby certify:

 8            That the attached proceedings were

 9  reported by me to the best of my ability to hear due

10  to the presence of a child screaming uncontrollably.

11

12            That I thereafter transcribed my said

13  shorthand notes that were taken at the time to the

14  best of my ability to hear and identify the words

15  being said over the child's screams.

16

17            I further certify that I am not a

18  relative or employee of an attorney or counsel

19  involved in said action, nor a person financially

20  interested in said action.

21

22        DATED THIS ____ DAY OF _____, 2002.

23

24            ---------------------------
                THERESE FERRIOLA, CCR #314
25
```

THERESE FERRIOLA
OFFICIAL COURT REPORTER
(702) 455-3048

1   TRAN
    CASE NO. PROTECTIVE ORDER
2

3        IN THE JUSTICE'S COURT OF LAS VEGAS TOWNSHIP

4              COUNTY OF CLARK, STATE OF NEVADA

5

6   RABBI LORNE WYNE,                  )      COPY
                                       )
7            Plaintiff,                )
                                       )
8        vs.                           )   CASE NO. 02P00996X
                                       )
9   YAAKOV VANN,                       )
                                       )
10           Defendant.                )
    _____     )
11

12

13                **REPORTER'S TRANSCRIPT**

14                         **OF**

15                    **PROCEEDINGS**

16        **BEFORE THE HONORABLE DOUGLAS SMITH**
                  **JUSTICE OF THE PEACE**
17
                TUESDAY, NOVEMBER 19, 2002
18

19  APPEARANCES:

20

21   For the Plaintiff:          IN PROPER PERSON

22

23   For the Defendant:          IN PROPER PERSON

24

25  Reported by: Therese Ferriola, CCR #314

1    LAS VEGAS, NEVADA, NOVEMBER 19, 2002, 9:00 A.M.

2

3                              * * * * *

4

5         THE COURT:  I have a quick protective

6    order.  It is not going to take long.

7              Rabbi, is it Wyne?

8         RABBI WYNE:  Yes.

9         THE COURT:  Come up on this side.

10             Yaakov Vann on this side.

11             This is Case 02PO-996.  I took all of

12   the testimony that I need, Mr. Vann.  I don't need

13   any more testimony.  My intent was when they filed

14   the motion to include the Rabbi in the protective

15   order, I granted that with reviewing the documents

16   only.  I didn't think we needed more testimony.  I

17   believe we've heard all the testimony that I need to

18   hear.

19             So the protective order will include

20   you in it as well.  But I intended that to happen.

21   In fact, I left a note with my secretary that I

22   believe it should happen; and when the paperwork

23   came up, it got a new case number rather than the

24   amendment to the protective order.

25             And I'm going to reiterate this

```
 1   again:  They don't want you at their synagogue.  Do
 2   you understand that?
 3                       I notice you have been stalking us a
 4   little bit.  And this is an open court.  You have a
 5   right to come in.  You haven't had a case on.  You
 6   come in and you visit.  And I'm sure you're looking
 7   at things in this department to figure out how to
 8   sue me, and that's fine.
 9                       But I also understand that you
10   threatened one of the ladies out front.  Be aware of
11   this:  If there's another threat, you're going to
12   jail.  Do you understand me?  Do you understand me
13   real clear?  You will go to jail if there's another
14   threat at my clerk out front.  I will not have it.
15                       Now, you don't have to listen to a
16   rabbinical court, that's your choice, but you will
17   listen to mine, or you'll go to jail.  Do you
18   understand?
19                       MR. VANN:  Yes, sir, I do.
20                       THE COURT:  Thank you.  You're excused.
21                       MR. VANN:  I would just like to object on
22   the record that the court case came back to this
23   courtroom.  I would also like to object that the
24   last time when you're saying you don't need to hear
25   any more testimony that you did not afford any
```

1 cross-examination in violation of my due process
2 rights.
3                 I specifically asked three times the
4 last time I was before your Honor to swear in the
5 witnesses, to afford me cross-examination, and you
6 denied me that three times. And today, of course,
7 you're denying any cross-examination.
8                 THE COURT: I believe you are irrational,
9 and I'm trying to protect the people of this
10 community. That's what I'm trying to do. Thank
11 you. You're excused. Do not threaten my clerks
12 again.
13                 Tom, escort him out.
14                 The protective order is granted. You
15 can wait for it. Sit on each side, wherever you
16 want to sit.
17                 Get Kathy in here to get the changes
18 made. Thank you.
19                 RABBI WYNE: Your Honor, your Honor, on
20 Sunday evening, just a point of clarification, for
21 myself --
22                 THE COURT: Identify yourself for the
23 record.
24                 RABBI WYNE: I'm Rabbi Lorne Wyne.
25                 THE COURT: Okay.

```
 1              RABBI WYNE:  Okay.  I have a protective
 2   order.  This is just a point of clarification.  On
 3   Sunday evening Mr. Vann knew that I was attending a
 4   fund-raising dinner for the school which our
 5   children go to.  He knew I was attending.  I was at
 6   the dinner.  I was walking towards my table,
 7   somebody pushed me, a little push, and I turned
 8   around, and it was Mr. Vann.  I did not call the
 9   police at that time.  There were 400 people there.
10   I did not want to taint their event.  I moved away.
11   He moved away.  I filed an incident report
12   yesterday.  Is that -- did I conduct myself
13   properly?  How should I --
14              THE COURT:  Absolutely.  You shouldn't
15   have self-help anyway.  There wasn't a protective
16   order in place for you.  There will be.
17              Now, I'm a little offended that you
18   would do that.  I know you're after this Rabbi.  I
19   am offended that you're doing that, but that's
20   between you and your God.  But if it happens again,
21   I'm going to have to put you in jail.  Do you
22   understand that?
23              MR. VANN:  Sir, for the record, sir, I
24   purchased my ticket before he did.
25              THE COURT:  Are you arguing with this
```

1  Court?

2         MR. VANN:  No, I'm just clarifying --

3         THE COURT:  Do you understand me?

4         MR. VANN:  -- for appeal, sir.

5         THE COURT:  Do you understand me?

6         MR. VANN:  Yes, I do, sir.

7         THE COURT:  Thank you.

8         MR. VANN:  I would like to clarify the

9  record.  As I said, I wasn't near him.  He got

10  pushed into me.  I wasn't moving.  I did nothing

11  wrong, sir.

12         THE COURT:  You stay away from this man.

13  Do you understand me?  Now, it's this way:  If you

14  see him in a department store, you see him in a

15  grocery store, and you're there first, you'd better

16  leave because you're the one that's going to get

17  arrested because there's a protective order out

18  against you.

19                   And if it were me, I wouldn't want to

20  be arrested.  I wouldn't want this trouble.

21  Apparently you want trouble, because you come to

22  this courtroom, you're harassing my staff, you're

23  harassing little clerks that make minimum wage.

24  You're a bully.  And I'm not going to have it

25  because I will have to push back, and I can push a

```
1    little harder than you can push; is that clear?
2               MR. VANN:  Yes, sir.
3               THE COURT:  Thank you.  All right.  We
4    have people that want to say things.  You have to
5    identify yourself for the record.
6               MRS. WYNE:  Helene Wyne, the Rabbi's wife.
7    Stand up?
8               THE COURT:  Yes.
9               MRS. WYNE:  The restraining order was in
10   effect.  We had one from the other judge.
11              THE COURT:  But I have this protective
12   order now.
13              MRS. WYNE:  Okay.  Thank you.
14              THE COURT:  This one is in effect.  I just
15   expect that you're going to come to your senses,
16   Mr. Vann, and not do this anymore.  I don't know
17   why.  I just hope that you will.
18                    The other rabbi had something he
19   would like to say.
20              RABBI RODMAN:  Your Honor, I just want to
21   ask you, I keep on getting served subpoenas by
22   either of them.  I am the principal of the school,
23   Rabbi Rodman.
24              THE COURT:  Why don't you guys leave him
25   alone?  Leave the Rabbi alone.
```

```
1                    Who keeps issuing subpoenas, Rabbi?
2              RABBI RODMAN:  His wife and him.  I just
3   want to clarify.
4              THE COURT:  Mr. Vann.
5              RABBI RODMAN:  So do I have to honor those
6   subpoenas from now on?
7              THE COURT:  Well, who's signing the
8   subpoenas?
9              RABBI RODMAN:  Him, he is.
10             THE COURT:  You don't have to honor
11  anything he's signed.
12             MR. VANN:  It's stamped by the clerk.
13             THE COURT:  If a judge signs it or if an
14  attorney signs it, call my office.
15             RABBI RODMAN:  Yes, your Honor.
16             MR. VANN:  They are stamped by the clerk,
17  your Honor.
18             THE COURT:  Why are you subpoenaing his
19  records again?  I thought we talked about it.
20             MR. VANN:  I didn't subpoena any records,
21  sir.
22             THE COURT:  Why are you subpoenaing him?
23             MR. VANN:  Because this is supposed to be
24  a hearing where witnesses testify.  That's the
25  normal course of things, unfortunately, your Honor.
```

```
 1              THE COURT:  I just want to protect the
 2   people, and it sounds to me like you're just being
 3   irrational.  Now, what do you subpoena them for if
 4   there's no other hearings?
 5              MR. VANN:  Well, there was supposed to be
 6   a hearing today.  I got a letter for a hearing
 7   today, sir.
 8              THE COURT:  I don't need to hear any more.
 9   I've heard enough.
10              MR. VANN:  Well, actually, sir --
11              THE COURT:  This isn't one where you're
12   going to go to jail, unless you violate it.  This is
13   one where I'm trying to keep peace in the community.
14   I'm just trying to keep peace, and you seem to be
15   fighting that.
16              MR. VANN:  I'm fighting?
17              THE COURT:  That's fine.  You can fight it
18   all you want.  But if you violate the protective
19   order, then I have to then use my powers, and I
20   will, I expect, unless you take it to the District
21   Court, granted, let them make the decision, let them
22   hear you.  I have heard plenty with affidavits and
23   with the documents and the people that were in this
24   court that you are acting irrational.
25                    You have acted irrational here.
```

```
1   You're in this court some days.  Again, it's an open
2   court.  You're looking for stuff probably.  I don't
3   care.
4                 But I'm telling you that if you
5   violate the protective order, I'm going to have you
6   arrested.  Do you understand that?
7                 MR. VANN:  Yes, I understand that.
8                 THE COURT:  Okay.  Thank you.  It's in
9   effect.  See you guys.  Wait so that this new
10  protective order can be issued.
11                MR. VANN:  Sir, I would also like to state
12  for the record that as much as you want to protect
13  people in the community, and I have no interest in
14  Mr. Wyne or anyone else from that congregation --
15                THE COURT:  I don't know Mr. Wyne from --
16                MR. VANN:  I have no interest in him.  I
17  have no interest in anyone from the congregation
18  that doesn't want to have any interest in me.
19  There's still requirements for a protective order to
20  be in place which have not been met.  There's been
21  no prima facie case on the record for a protective
22  order to have been issued, especially to deprive me
23  of my livelihood, to take me away from my business,
24  to take me away from dropping my kids off at school
25  has nothing to do with the situation going on.  That
```

 1    is uncalled for.  There's no prima facie case on the
 2    record for that.
 3              THE COURT:  Appeal it if you like.  It's
 4    coming back here if they deny it, and we'll have
 5    another hearing.  I have heard plenty.  I've seen
 6    your actions in court.
 7              MR. VANN:  Your Honor, we don't have any
 8    sworn testimony, your Honor.
 9              THE COURT:  I have seen your actions in
10    court.  I mean, I'm tempted to put you in custody
11    right now, real tempted.
12              MR. VANN:  Thank you.
13              THE COURT:  I would ask that you leave my
14    courtroom now.  Stay out in the hall so you can be
15    served this document.
16              And then you folks, if you will wait
17    here.
18              RABBI WYNE:  Okay.  Your Honor, would you
19    like to hear from Sergeant Kosmides who's taken --
20              DETECTIVE KOSMIDES:  Detective Honor, we
21    have so many event numbers with him, and I think
22    this is going to take a turn for the worse
23    personally because I have been out on so many event
24    numbers.
25              THE COURT:  We are going to start from

1    now, because I don't have the protective order for
2    this Rabbi, but I have the cases all in front of me.
3    If there's a problem, arrest him.
4              DETECTIVE KOSMIDES:  Okay.
5              THE COURT:  And then we will deal with it
6    that way.
7              (Break in the proceedings.)
8              THE COURT:  What we're going to do,
9    Mr. Vann, I have been informed and I didn't realize
10   there was a protective order from the Rabbi against
11   you, we're going to have a hearing on Friday.  Now,
12   any witnesses, who would you like here?
13             MR. VANN:  He just left, the witness.
14             THE COURT:  I will have him here on
15   Friday.
16             MR. VANN:  Rabbi Harlig, Rabbi Rodman.  I
17   think Rabbi Everett is out of town though.
18             THE COURT:  Friday we're going to have a
19   hearing whether I should put you in jail if you
20   violated the protective order.  So I would hire a
21   lawyer if I were you.  We'll have a hearing, we'll
22   have sworn testimony from both sides, and we will
23   have a determination if you violated this protective
24   order.  So make sure you have witnesses.
25                  And if you need help getting

```
 1   witnesses, I'll get them here for Friday.
 2                So those whose names have been
 3   mentioned, please be here Friday at 8:30.  We'll
 4   have a hearing.
 5                MR. VANN:  So --
 6                THE COURT:  We're going to have the
 7   hearing on whether you violated the protective
 8   order.  Okay.  You probably should have a lawyer
 9   here.  You sound pretty educated though, like you
10   know the court system.  Are you going to represent
11   yourself?
12                MR. VANN:  Don't know.
13                THE COURT:  How far did you go in school?
14                MR. VANN:  Pretty far.
15                THE COURT:  How far?
16                MR. VANN:  Past college.
17                THE COURT:  To what?
18                MR. VANN:  Graduate degree.
19                THE COURT:  In what?
20                MR. VANN:  Law.
21                THE COURT:  So you have a law degree.
22   From where?
23                MR. VANN:  Yes, sir.
24                THE COURT:  From where?
25                MR. VANN:  Whittier Law School.
```

```
 1              THE COURT:  You know, that's a great
 2   school, great people come from Whittier.
 3              MR. VANN:  Former president.
 4              THE COURT:  No, he didn't go to Whittier
 5   Law School.
 6              MR. VANN:  You went to Whittier.
 7              THE COURT:  I went to Whittier, good law
 8   school.
 9              See you back here Friday.  If you
10   need to bring a lawyer, fine.  If you don't, you're
11   a trained lawyer, you can handle it yourself.
12              We're going to have an extensive
13   hearing starting Friday.  You bring all your
14   witnesses, Rabbi Wyne.
15              And you bring your witnesses.
16              And we're going to have a hearing on
17   whether this was violated.  You understand the scope
18   of the case is just whether this was violated.
19   Okay?  Thank you.
20              MR. VANN:  The Court's going to subpoena
21   the witnesses?
22              THE COURT:  Pardon?
23              MR. VANN:  The Court's going to subpoena
24   the witnesses?
25              THE COURT:  What witnesses do you want?
```

1                   MR. VANN:  Rabbi Harlin, also Rabbi Lynn

2       (phonetic), Rabbi Granite (phonetic), Mrs. Granite

3       (phonetic), Johnny Siegelstein, Rabbi Siegel

4       (phonetic), Mrs. Siegel, Mrs. Goldenblatt

5       (phonetic).

6                   THE COURT:  Why are all of these people

7       necessary?

8                   MR. VANN:  They were all there.

9                   THE COURT:  To whether you violated this?

10                  MR. VANN:  They were all there.

11                  THE COURT:  Make sure, if you have a

12      problem, we will deal with it then; you heard all of

13      their names, make sure as many of those people can

14      be here.  And if we have problems, then we will

15      issue more subpoenas at that point.

16                  MR. VANN:  I would also like Bob Aaron

17      (phonetic) to be here.

18                  THE COURT:  Well, we'll start the hearing.

19                  MR. VANN:  Rabbi Weiser (phonetic),

20      Mrs. Weiser (phonetic).

21                  THE COURT:  You're not going to have

22      everybody in the phone book.  Sorry.

23                  MR. VANN:  These were people, reputable

24      witnesses that were there.

25                  THE COURT:  Okay.  Thanks.  See you on

1    Friday, 8:30.

2

3

4                        * * * * *
     Attest: Full, true, accurate transcript of proceedings.
5

6                         _____
                          THERESE FERRIOLA, CCR #314
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Justice Court, Las Vegas Township

## CLARK COUNTY, NEVADA

FILED

Nov 8  11 57 AM '02

JUSTICE COURT
LAS VEGAS NEVADA
BY _____
DEPUTY

MICHELE MALABE                Plaintiff,

—vs—

Case No. 02 100?983X

YAAKOV VANN           Defendant.

## NOTICE OF APPEAL

The ___DEFENDANT___ in the above entitled matter appeals to the District Court, Clark

County, Nevada, from the judgment entered on the _8_ day of _November_, _2002_ in the above entitled

Court.

DATE: _11/5/02_

YAAKOV VANN

**Appellant** 2005 MADAGASCAR LANE
(type address) LAS VEGAS NV 89117

## CERTIFICATION OF MAILING

The undersigned certifies that on the _____ day of _____, 19____, a copy of the foregoing Notice

of Appeal was mailed to _____ at _____

_____ by depositing a copy in the United States Mail in an addressed sealed envelope,

postage prepaid.

DATE: _____          _____

JC-12 (Civil)

FILED

# CONFIDENTIAL

Nov 8  11 57 AM '02

JUSTICE COURT
BY LAS VEGAS NEVADA

DEPUTY

YAAVON VANN
_____
(your name)

2005  MADAGASCAR LN
_____
(your street address)

LAS VEGAS  NV  89117
_____
(your city, state, and zip code)

702  809-0351
_____
(your phone number)

**IN PROPER PERSON**

## JUSTICE COURT, LAS VEGAS TOWNSHIP

## CLARK COUNTY, NEVADA

MICHELE DALASG
_____ )   Case No    02P0Ø983X
_____ )   Dept No    JUSTICE CT  2
          Plaintiff          )
                             )
                             )
vs                           )
                             )
                             )
YAAVON  VANN                  )   **APPLICATION TO PROCEED**
_____ )   **IN FORMA PAUPERIS**
                             )   **RELATING TO** _____
          Defendant.         )   TPO
                             )
_____ )

Pursuant to NRS 65 040 and NRS 12 015, and based on the following Affidavit, I request

permission from this Court to proceed without paying court costs or other costs and fees as

provided in NRS 12 015 because I lack sufficient financial ability

1

JC-30 (Civil/Criminal Counter)
11/01

# CONFIDENTIAL

## AFFIDAVIT

STATE OF NEVADA )
  ) ss
COUNTY OF CLARK )

I, _Yaakov Vann_ , after being duly sworn, depose and
 or Affirms
(your name)

state as follows

I wish to file with this Court the concurrently submitted Affidavit  I cannot pay the costs
of this action because I lack sufficient income, assets, or other resources

Including myself, there are ___2___ adults and ___3___ children in my
household

My total **monthly** income is  (please enter information below)  ;

**Monthly Income earned by
household from work**                    $ ____0____

**Monthly Income from ADC,
Welfare, Clark County Social Services,
Unemployment Benefits, Worker-s
Compensation, Child Support (that you
receive) or Social Security**          $ ___0___     _my spouse's
unemployment
is about to be
was concl._

**Other Income:**

_we had a kosher farm
business but it_
(Type of Income) _was just enjoying
from cutsol to_       $ ___0___

(Type of Income) _my biggest costing
and place where
95% almost_
My total household monthly income is  _of my_       $ ___0___
 _sales take place._   (Total from above lines)

2

# CONFIDENTIAL

The following represents a list of my assets and their value

|  | | **Value** | **Loan Balance** |
|---|---|---|---|

**Car**  _NONE_
(Year and type of car)  $_____   $_____

**Mobile Home,
House, or
Other Real Estate**  _NONE, I LIVE IN_
(Size, type,  _A RELATIVES_
and/or year of home) _HOUSE_   $_____   $_____

**Bank Accounts**  _ASTORIA CHECKING_   $ _1400_
(Name of bank   _BUT HAVE_
and type of account)   _TO PAY_
_UTILITIES EXPENSES_
_THIS MONTH_

**Other**  _____   $_____   $_____
_____   $_____   $_____
_____   $_____   $_____

**My total monthly expenses are:**

| | |
|---|---|
| Rent | $_____ |
| Phone, Gas, Electricity, and Other Utilities | $ _200_ |
| Food | $ _800_ |
| Child Care | $_____ |
| Insurance | $ _250_ |
| Medical | $_____ |
| Transportation | $ _50_ |
| Other | $ _STUDENT LOAN I_ |
|  | _EX CESS of $100,000_ |

(List other expenses)

**TOTAL MONTHLY EXPENSES**  $ _1300 PLUS SEVERAL HUNDRED_
(Total from above lines) _he STUDENT_
_LOANS_
_BUT I HAVE_

_____
AFFIANT (your signature)  _NO MONEY
FOR
THOSE_

3

**THIS FORM MUST BE NOTARIZED <u>OR</u> ACCOMPANIED BY THE APPROPRIATE UNSWORN DECLARATION**

| SUBSCRIBED and SWORN to before me this ___ day of _____, 2000 | (A) If executed in Nevada, please complete the following |
|---|---|
| | AI declare under penalty of perjury that the foregoing is true and correct @ |
| _____ **Notary Public** | Executed on _1#/ ʃ/oᴸ_ **(Date)** |
| | _____ **(Signature)** |
| | (B) If executed outside of Nevada, please complete the following |
| | AI declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct @ |
| | Executed on _____ **(Date)** |
| | _____ **(Signature)** |

4

## ORDER OF THE COURT

| The Application is hereby **denied.** | The Application is hereby **granted** |
|---|---|
| | The Clerk of the Court shall allow Affiant to appear in this action without paying costs, charges, or fees, and the Clerk shall file or issue any necessary writ, process, pleading, or paper without charge |
| | IT IS FURTHER ORDERED that the Constable or Sheriff or any other appropriate public officer within the State shall make personal service of any necessary writ, process, pleading, or paper without charge |
| | IT IS FURTHER ORDERED that if Affiant=s financial condition improves during the pendency of this action such that costs, charges, and fees can be paid from that point forward, Affiant shall immediately inform the Court as to that fact |
| _____ <br><br>**Justice of the Peace** | _____ <br><br>**Justice of the Peace** |
| _____ <br>**Date** | _____ <br>**Date** |

5

# JUSTICE COURT, LAS VEGAS TOWNSHIP
## CLARK COUNTY, NEVADA

STATE OF NEVADA,

       Plaintiff,

       vs.

_Yaakov Vann_ ,

       Defendant

) Case No.: _02P00996X_
)
) Dept No: _____2_____
)
)
) **ORDER FOR SUMMARY PUNISHMENT**
) **OF CONTEMPT COMMITTED IN THE**
) **IMMEDIATE VIEW AND PRESENCE**
) **OF THE COURT**
)
)

WHEREAS NRS 74.040 declares that A(a) justice of the peace may punish for contempt for the same acts or omissions, in the same manner and with the same effects as is provided for judges in chapter 22 of NRS, and

WHEREAS NRS 22.030 declares that when a contempt is committed in the immediate view and presence of the court or judge at chambers, it may be punished summarily, for which an order shall be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt and that he be punished as therein prescribed, and

WHEREAS, on the _2nd_ day of _April_ , 200_3_ , in open court and while court was in session appeared

NAME: _Yaakov Vann_ , who was a

(X)PARTY   ( )WITNESS   ( )SPECTATOR, and such individual committed the following act(s) in the immediate view and presence of the court:

(X) Disorderly, contemptuous or insolent behavior toward the judge while he/she is holding court, or engaged in his judicial duties at chambers.

-1-

1  (X) A breach of the peace, boisterous conduct or violent disturbance in the presence of
2  the Court, or in its immediate vicinity, tending to interrupt the due course of the trial or other
3  judicial proceeding.

4      ( ) Refusing to be sworn or answer as a witness.

5      ( ) Disobeying a lawful writ/order/rule/process issued by the court/judge at chambers.

6      ( ) _____

7  and WHEREAS such conduct

8      ( ) Demeaned the Court,

9      ( ) Derogated the authority of the Court

10     (X) Interfered with the orderly administration of justice,
11     ( ) A Come into ct disrupty a full courtroom
12  late
    and required immediate vindication by the Court to preserve order and respect.

13     Based upon the above findings, _____

14  Is guilty of a direct contempt.  The contemnor, when asked if he/she had anything to say as to

15  why sentence should not be pronounced, replied: _____

16  _____

17     The Court then determined that: A was in Contempt.

18     Therefore, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the

19  contemnor is hereby sentenced to the following punishment:

20     ( )   A fine in the amount of_____($500.00 or less) **and/or**

21     ( )   Imprisonment for **25  Stat. Check 3 days.** days. (25 or less)

22

23  DATED this **2** day of **April**, 200**3**.

24

25

                                    _____
                                    JUSTICE OF THE PEACE

-2-

# Justice Court, Las Vegas Township

## MINUTE ORDER

CASE NO. __02P00996X__
PAGE FIVE

__RABBI LORNE YITZCHAK WYNE__ ) __YAAKOV VANN__

)

)
_____ Plaintiff ) _____ Defendant

| DATE, JUDGE, OFFICERS OF COURT PRESENT | HEARING | CONTINUED TO |
|---|---|---|
| APRIL 3, 2003<br>D. SMITH<br>P. DUBOWSKY, ESQ<br>FOR PLAINTIFF<br>R. BKAER, PD<br>FOR DEFENDANT<br>C. FERRIOLA, CR<br>M. KRAUS, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT **IN CUSTODY**<br>DEFENDANT RELEASED<br>DEFENDANT TO STAY AWAY FROM VICTIMS<br>PASSED BY COURT | 4/24/03 8:30 #2<br><br><br>MRK |
| APRIL 7, 2003 | COURT ORDERS MATTER RE-SET FOR 5/6/03 8:30 #2<br>PLAINTIFF, DEFENDANT, R. BAKER, PD, AND P. DUBOWSKY, ESQ TO<br>BE NOTIFIED OF NEW DATE | MRK |
| APRIL 7, 2003 | P. DUBOWSKY ESQ FOR PLAINTIFF NOTIFIED BY PHONE/cb<br>R. BAKER, PD FOR DEFENDANT NOTIFIED BY VOICE MAIL MSG/cb | |
| APRIL 10, 2003 | ORDER FOR TRANSCRIPTS FILED | cmc |
| APRIL 10, 2003 | REPORTER'S TRANSCRIPT OF PROCEEDINGS FILED | cmc |
| MAY 6, 2003<br>D. SMITH<br>P. DUBOWSKY, ESQ<br>FOR PLAINTIFF<br>B. MILLER, PD<br>FOR DEFENDANT<br>C. FERRIOLA, CR<br>M. KRAUS, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>SUPPLEMENTAL MEMORANDUM OF POINTS & AUTHORITIES FILED IN COURT<br>COURT RELIEVES PUBLIC DEFENDER FROM REPRESENTING THE DEFENDANT<br>DEFENDANT REQUESTS COURT APPOINTED COUNSEL<br>DEFENDANT FILLED OUT PUBLIC DEFENDER BLUE FORM<br>DA TO DO BACKGROUND INVESTIGATION ON DEFENDANT | 5/8/03 9:30 #2 |
| | PASSED BY COURT FOR COURT APPOINTED COUNSEL AND FOR COURT TO<br>RECUSE SELF AND TRANSFER CASE TO HENDERSON JUSTICE COURT FOR<br>ALL FURTHER HEARINGS<br>E. LALLY, ESQ NOTIFIED/mrk | MRK |

## MINUTES – PROTECTIVE ORDER

JC-28 (TPO)
Rev. 07/99

# Justice Court, Las Vegas Township

## MINUTE ORDER

CASE NO. 02PO0996X

PAGE FOUR

| RABBI LORNE YITZCHAK WYNE | ) | YAAKOV VANN |
|---|---|---|
| | ) | |
| Plaintiff | ) | Defendant |

| DATE, JUDGE, OFFICERS OF COURT PRESENT | HEARING | CONTINUED TO |
|---|---|---|
| ARCH 26, 2003 | ORDER FOR TRANSCRIPT OF PROCEEDINGS SIGNED 3/24/03 | jd |
| | REPORTER'S TRANSCRIPT OF 3-21-03 PROCEEDINGS FILED | jd |
| | REPORTER'S TRANSCRIPT OF 11-22-02 PROCEEDINGS FILED | jd |
| PRIL 1, 2003<br>. ZIMMERMAN FOR<br>. SMITH<br>. DUBOWSKY, ESQ<br>OR PLAINTIFF<br>. BAKER, PD<br>OR DEFENDANT<br>. BROKA, CR<br>. JOLLEY, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>COURT ORDERS THAT JUDGE SMITH WILL NOT BE RECUSED FROM THIS<br>MATTER  (DEFENDANT REFUSED TO ANSWER QUESTIONS REGARDING THE<br>ALLEGATIONS THAT JUDGE SMITH WAS BRIBED)<br>PUBLIC DEFENDER APPOINTED TO REPRESENT THE DEFENDANT – PUBLIC<br>DEFENDER DECLINES TO ACCEPT THE APPOINTMENT – PD IS ORDERED<br>TO TAKE THE APPOINTMENT<br>PASSED FOR PD TO RAISE ISSUES REGARDING THE APPOINTMENT WITH<br>JUDGE SMITH AND TO SET CONTINUANCE OF COURT HEARING<br>COURT ORDERS THAT JUDGE SMITH MAY HEAR ALL CONTINUANCES OF<br>COURT HEARINGS ON THIS MATTER | 4/2/03 9:00 #2<br><br><br><br><br><br><br><br><br><br>MRK |
| PRIL 2, 2003<br>. SMITH<br>. BAKER, PD<br>. FERRIOLA, CR<br>. KRAUS, CLK<br>. DUBOWSKY, ESQ<br>OR PLAINTIFF<br>PPEARED LATE | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF NOT PRESENT IN COURT (APPEARED LATE)<br>DEFENDANT NOT PRESENT IN COURT (APPEARED LATE)<br>MOTION BY PD TO DECLINE APPOINTMENT FILED IN OPEN COURT, DENIED<br>BENCH WARRANT ISSUED:  $0/0 – RECALLED<br>DEFENDANT REMANDED TO CUSTODY COC – BAIL SET:  $0/$0<br>PER NRS 22.010(3), DEFENDANT FOUND IN CONTEMPT OF COURT<br>ORDER FOR SUMMARY PUNISHMENT OF CONTEMPT COMMITTED IN THE<br>IMMEDIATE VIEW AND PRESENCE OF THE COURT SIGNED, SERVED<br>AND FILED IN COURT<br>MOTION BY DEFENSE FOR O/R, DENIED<br>PASSED BY COURT FOR STATUS CHECK<br>R. BAKER, PD, PLAINTIFF AND PLAINTIFF'S ATTORNEY TO BE NOTIFIED/ | 4/3/03 8:30 #2<br><br><br><br><br><br><br><br><br><br><br><br>MRK |

## MINUTES – PROTECTIVE ORDER

# Justice Court, Las Vegas Township

## MINUTE ORDER

CASE NO. <u>02P00996X</u>

PAGE THREE

| <u>RABBI LORNE YITZCHAK WYNE</u> | ) | <u>YAAKOV VANN</u> |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff | | Defendant |

| DATE, JUDGE, OFFICERS OF COURT PRESENT | HEARING | CONTINUED TO |
|---|---|---|
| ANUARY 21, 2003<br>. SMITH<br>. CREELMAN, CLK<br>. FERRIOLA, CR<br>. SIEGEL, ESQ. | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF NOT PRESENT IN COURT<br>DEFENDANT NOT PRESENT IN COURT<br>OFF CALENDAR | cmc |
| ARCH 17, 2003 | MOTION FOR APPOINTMENT OF APPELLATE ATTORNEY AND REQUEST FOR PAYMENT OF COSTS FILED BY JAY L SIEGEL, ESQ, ATTORNEY FOR YAAKOV VANN<br><br>SET FOR HEARING<br>PLAINTIFF NOTIFIED BY PHONE/jd<br>DEFENDANT NOTIFIED BY COPY OF MOTION TO HIS ATTORNEY/jd | 3-28-03 8:30 #2<br>jd |
| ARCH 20, 2003 | PER JUDGE SMITH, THIS MATTER IS SET FOR HEARING<br>PLAINTIFF NOTIFIED BY PHONE/jd<br>J CHIP SIEGEL, ESQ, NOTIFIED BY PHONE/jd | 3-21-03 8:30 #2<br>jd |
| MARCH 21, 2003<br>D. SMITH<br>P. DUBOWSKY, ESQ<br>AMICUS CURIAE FOR PLAINTIFF<br>J. SIEGEL, ESQ<br>FOR DEFENDANT<br>J.D. HASTINGS, PD | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>MOTION BY DEFENSE FOR APPOINTMENT OF APPELLATE ATTORNEY, MOTION DENIED<br>MOTION BY DEFENSE FOR PAYMENT OF COSTS, DENIED<br>MOTION BY DEFENSE TO WITHDRAW AS ATTORNEY OF RECORD, GRANTED<br>COURT ORDERS CASE RANDOMLY RE-TRACKED TO CHIEF JUDGE, DEPT 8 | 4/1/03 8:30 #8<br>COURTROOM 2 |
| APPOINTED FOR DEFENDANT<br>T. FERRIOLA, CR<br>M. KRAUS, CLK | FOR #1 – DETERMINATION IF CASE IS CRIMINAL OR CIVIL<br>     #2 – IF JUDGE SMITH SHOULD RECUSE HIMSELF<br>     #3 – IF ANOTHER JUDGE SHOULD HEAR THE CONTEMPT HEARING<br>COURT ORDERS TRANSCRIPTS OF 11/22/02 & TODAY (3/21/03)<br>FUTURE COURT DATE (3/28/03 8:30 #2) – VACATED<br>DEFENDANT TO STAY AWAY FROM VICTIMS<br>PASSED BY COURT | MRK |

## MINUTES – PROTECTIVE ORDER

# Justice Court, Las Vegas Township

## MINUTE ORDER

CASE NO. 02P00996X

PAGE TWO

RABBI LORNE YITZCHAK WYNE )   YAAKOV VANN

                                          )

                                          )

                    Plaintiff                                          Defendant

| DATE, JUDGE, OFFICERS OF COURT PRESENT | HEARING | CONTINUED TO |
|---|---|---|
| NOVEMBER 19, 2002<br>. DABNEY FOR<br>. ABBATANGELO<br>. SILVAGGIO, CR<br>(AT PLAINTIFF'S REQUEST)<br>. MCCREARY, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>MOTION BY PLAINTIFF TO AMEND PROTECTIVE ORDER<br>CASE TRANSFERED TO DEPT 2 | MRK |
| NOVEMBER 19, 2002<br>. SMITH<br>. FERRIOLA, CR<br>. KRAUS, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>EXTENDED ORDER OF PROTECTION GRANTED<br>PASSED BY COURT FOR HEARING | 11/22/02 8:30 #2<br><br>MRK |
| NOVEMBER 22. 2002<br>. SMITH<br>. SIEGEL, ESQ FOR DEFENDANT<br>. FERRIOLA, CR<br>. KRAUS, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFF NOT PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>PASSED BY COURT FOR HEARING | 12/20/02 8:30 #2<br><br>MRK |
| DECEMBER 20, 2002<br>. SMITH<br>. SIEGEL, ESQ FOR DEFENDANT<br>. FERRIOLA, CR<br>. KRAUS, CLK | TIME SET FOR TEMPORARY ORDER FOR PROTECTION HEARING<br>PLAINTIFFS PRESENT IN COURT<br>DEFENDANT PRESENT IN COURT<br>DEFENDANT SENTENCED TO 25 DAYS IN JAIL - SUSPENDED<br>CONTINUED BY COURT FOR STATUS CHECK<br>DEFENDANT TO STAY AWAY FROM PLAINTIFFS AND FAMILY<br>DEFENDANT TO BE PRESENT ON NEXT COURT DATE<br>PLAINTIFFS NOT TO BE PRESENT ON NEXT COURT DATE UNLESS<br>FURTHER PROBLEMS | 1/21/03 8:30 #2<br><br>MRK |
| JANUARY 8, 2003 | REPORTER'S TRANSCRIPT OF 12-20-02 PROCEEDINGS FILED | jd |

## MINUTES – PROTECTIVE ORDER

JC-28 (TPO)
Rev. 07/99

# Justice Court, Las Vegas Township

### MINUTE ORDER

CASE NO. 02PO0996X

| | | |
|---|---|---|
| RABBI LORNE YITZCHAK WYNE | ) | YAAKOV VANN |
| | ) | |
| Plaintiff | ) | Defendant |

| DATE, JUDGE, OFFICERS OF COURT PRESENT | HEARING | CONTINUED TO |
|---|---|---|
| OCTOBER 28, 2002 | APPLICATION FOR A TEMPORARY ORDER FOR PROTECTION AGAINST HARASSMENT, STALKING AND AGGRAVATED STALKING FILED | jd |
| OCTOBER 29, 2002 | TEMPORARY ORDER FOR PROTECTION GRANTED | jd |
| OCTOBER 30, 2002 | SENT FOR SERVICE | jd |
| | COPY OF PROTECTION ORDER **FAXED** TO PLAINTIFF | jd |
| NOVEMBER 6, 2002 | TEMPORARY ORDER FOR PROTECTION **SERVED** UPON DEFENDANT | jd |
| NOVEMBER 7, 2002 | MOTION BY DEFENDANT TO **RESCIND** TEMPORARY ORDER FOR PROTECTION | jd |
| NOVEMBER 8, 2002 | MOTION BY PLAINTIFF TO **AMEND** PROTECTION ORDER TO ADD WIFE AND CHILDREN | jd |
| NOVEMBER 12, 2002 | SET FOR HEARING PLAINTIFF NOTIFIED BY PHONE/jd DEFENDANT NOTIFIED BY CERTIFIED LETTER AND REGULAR MAIL (NO LOCAL PHONE NUMBER ON DEFENDANT)jd | 11-19-02 9:00 #3 jd |
| | | |

### MINUTES – PROTECTIVE ORDER

JC-28 (TPO)
Rev. 07/99